UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHLEEN TALLEY, individually and on behalf of the proposed class,<br><br>Plaintiff,<br><br>v.<br><br>RARE BEAUTY LLC, and DOE LICENSEES 1-5,<br><br>Defendants. | CASE NO. 2:25-cv-02749-JNW<br><br>REMAND ORDER |

## 1. INTRODUCTION

This matter comes before the Court on the Parties' responses to the Court's order for supplemental briefing on whether Plaintiff Kathleen Talley has Article III standing. Dkt. Nos. 24, 25. For the reasons stated below, the Court finds it lacks subject matter jurisdiction, DENIES Defendant Rare Beauty LLC's ("Rare Beauty") request for a stay, and REMANDS the case to King County Superior Court.

## 2. BACKGROUND

Talley filed this putative class action against Rare Beauty in King County Superior Court on November 14, 2025. Dkt. No. 1-2 at 2. Rare Beauty removed this

action to this Court, asserting federal jurisdiction under the Class Action Fairness Act of 2005 (“CAFA”). Dkt. No. 1. Talley alleges that Rare Beauty violated Washington’s Commercial Electronic Mail Act (“CEMA”) and Consumer Protection Act (“CPA”) by sending consumers marketing emails with false or misleading subject lines. Dkt. No. 1-2 ¶¶ 39–55.

On August 31, 2026, the Court ordered supplemental briefing on two issues: first, whether Talley has Article III standing, and if so, whether the case should be stayed pending the Ninth Circuit’s decisions in *Montes v. Penney OpCo., LLC et al.*, Case No. 25-8045 and *Montes v. SPARC Grp., LLC*, Case No. 23-35496; and second, whether CEMA damages are calculated per-email or per-recipient, and whether the amount in controversy satisfies the minimum for diversity or CAFA jurisdiction. Dkt. No. 22 at 2–3. Because Article III standing is a threshold issue, the Court starts there. *Hutton v. Papa John’s USA Inc.*, No. C25-1922-KKE, 2026 WL 2210133, at *1 (W.D. Wash. July 31, 2026).

## 3. DISCUSSION

### 3.1 Legal standard.

“Under Article III, the Federal Judiciary is vested with the ‘Power’ to resolve not questions and issues but ‘Cases’ or ‘Controversies.’” *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). “Among other things, that limitation requires a plaintiff to have standing.” *Fed. Election Comm’n v. Cruz*, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The

standing inquiry begins with a simple principle: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc.* (*Spokeo II*), 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 341 (2016) *as revised* (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340). Put simply, "an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427. The key question is whether the plaintiff has identified "a close historical or common-law analogue" for the asserted injury. *Id*. at 424. Physical and monetary harms readily qualify, and so can some intangible harms, such as intrusion upon seclusion. *Id*. at 425.

"The burden of establishing removal jurisdiction, even in [CAFA] cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). So Rare Beauty, as the party invoking federal jurisdiction, must establish "the facts necessary to support standing with the manner and degree

of evidence required at the successive stages of the litigation." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). At the pleading stage, the Court looks to the allegations in the complaint. *See id.* at 1099 & n.2. If the Court determines, after removal, that it lacks subject matter jurisdiction, it must remand the case to state court. 28 U.S.C. § 1447(c). Remand, not dismissal, is the proper remedy. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

**3.2 Rare Beauty has not shown that Talley suffered a concrete injury.**

Both Parties argue that this case is distinguishable from the "ever-growing list of decisions [in this District] finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026) (collecting cases). Specifically, the Parties contend that Talley has Article III standing because she alleges injuries *beyond* bare CEMA violations: "[Rare Beauty's] conduct wasted consumers' time and device storage and interfered with their ability to manage legitimate email communications." Dkt. No. 1-2 ¶ 43. Rare Beauty argues that these harms 'resemble the type[s] of harms remedied by nuisance or fraud actions' traditionally recognized at common law." Dkt. No. 24 at 3 (quoting *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019)).

The Parties urge the Court to follow *Harbers*. But *Harbers* was decided before *TransUnion*, and it rested on the premise that a CEMA violation is itself "the kind

of concrete injury that the Washington Legislature sought to prevent." *Harbers*, 415 F. Supp. 3d at 1009. *TransUnion* holds that a legislature's "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." 594 U.S. at 426. As a result, the Court declines to follow *Harbers*.

Nor do Talley's alleged harms beyond the statutory violation resemble those that courts traditionally redress in cases involving unwanted marketing, such as invasion of privacy, intrusion upon seclusion, and nuisance. Each of those analogues depends on contact the plaintiff did not want. *Merrick v. Premium Brands Opco LLC*, No. 2:25-cv-02291-JNW, 2026 WL 3025764, at *2 (W.D. Wash. Oct. 8, 2026); *see Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025).

Talley's added allegations do not change the result. She alleges that "[w]hen a customer signs up for one of Rare Beauty's mailing lists either directly or by making a purpose in which they provide an email address, the customer begins to receive promotional emails." Dkt. No. 1-2 ¶ 11. Talley argues that "[r]egardless of whether some emails were expected or consented to, deceptive messages make it harder to manage one's inbox." Dkt. No. 25 at 2. But in her Complaint, Talley falls short of alleging that she did not consent to or want Rare Beauty marketing emails. The mere 'receipt of alleged misleading or false marketing email subject lines from a solicited company,' absent any allegation of 'economic loss, detrimental reliance, or any comparable injury,' does not 'constitute a concrete harm.'" *Nuri v. True*

*Religion Apparel*, No. 2:25-CV-00690-LK, 2026 WL 864886, at *3 (W.D. Wash. Mar. 30, 2026) (quoting *Montes*, 2025 WL 3485827, at *3). Talley also alleges that Rare Beauty's emails "consumed consumers' time and device storage, interfered with their ability to manage legitimate email communications, and attempted to manipulate purchasing decisions through deception." Dkt. No. 1-2 ¶¶ 27, 43, 54. But these allegations describe consumers generally. Talley identifies one email she received, *id.* ¶ 12, and does not allege that it cost her time or storage, that she found it unwanted, or that she bought anything, relied on it, or lost money. *See Merrick*, 2026 WL 3025764, at *2–3.

Because Rare Beauty has not shown that the violation caused Talley concrete harm, it has not carried its burden to establish Article III standing.

**3.3 Remand is appropriate.**

Rare Beauty argues that, if the Court has any doubt about its jurisdiction, it should stay this case pending resolution of the appeal in *Montes v. Penney OpCo, LLC*, No. 26-241 (9th Cir. Jan. 13, 2026). Dkt. No. 24 at 2. But the Court does not find standing to be an open question. It reaches its conclusion based on the allegations in the Complaint, and it need not await further rulings from the Ninth Circuit. Because the Court lacks jurisdiction, it doesn't reach Talley's arguments against a stay or the Parties' positioins on how CEMA damages are calculated.

Accordingly, the Court finds remand is the appropriate course. *See* 28 U.S.C. § 1447(c); *Polo*, 833 F.3d at 1196.

## 4. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. This case is REMANDED to King County Superior Court, effective FOURTEEN (14) days from the date of this Order. *See* LCR 3(i).
2. Rare Beauty's motion to compel arbitration, Dkt. No. 14, is DENIED as moot.
3. The Clerk of Court is directed to CLOSE this case.

Dated this 27th day of October, 2026.

Jamal N. Whitehead
United States District Judge